# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL H. KING, | CASE NO. 1:10-cv-01058-SMS |
| Plaintiff, | |
| v. | ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |
| MICHAEL ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Paul H. King seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.)* (the "Act"). The matter is currently before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge. Following a review of the complete record and applicable law, this Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court affirms the Commissioner's determination.

**I.    Administrative Record**

    **A.    Procedural History**

Plaintiff has filed multiple claims for disability benefits. On March 21, 2005, after finding that Plaintiff had established a change in his condition since the last prior claim,

Administrative Law Judge Patricia Leary Flierl ("ALJ Flierl") again denied Plaintiff's application for disability benefits.

On September 28, 2005, Plaintiff filed an application under Title XVI for supplemental security income, alleging disability beginning September 28, 2005. The claim was initially denied on March 3, 2006, and upon reconsideration on January 22, 2007. Plaintiff requested a hearing on February 7, 2007.

Plaintiff appeared and testified at a hearing on December 6, 2007. In a decision dated April 22, 2008, Administrative Law Judge Michael J. Haubner ("ALJ") denied Plaintiff's application. The Appeals Council affirmed the ALJ's decision on April 12, 2010. On June 10, 2010, Plaintiff filed his complaint in this Court.

**B.    Factual Record**

Plaintiff (born June 30, 1970) last worked as a marble and glass installer on June 30, 1994. He did not remember why he stopped working. He supported himself on general relief.

Plaintiff attended school through the ninth grade. He had no additional education or training.

Plaintiff experienced his first motorcycle accident in 1995, breaking his right clavicle and dislocating his left shoulder. As a result of his injuries, he underwent surgery to repair a torn rotator cuff in his left shoulder. He was again injured in a 1999 motorcycle accident.

Plaintiff was able to cook for himself twice a day but required help with chores like vacuuming and dusting. He shopped for groceries twice a week. Plaintiff enjoyed watching television. He drove a standard-shift car.

Plaintiff complains of severe pain in his back, neck and shoulders, dating to his 1995 motorcycle accident. To relieve the pain, he takes Hydro/APAP. Rest sometimes relieves the pain. He reported difficulty grasping things, and described dropping things like water bottles and cigarettes. Because of difficulty grasping pens and pencils, he could only write for about five minutes at a time.

Plaintiff received medical care at the Tulare Visalia Health Care Center, which appears to have monitored his pain medications and treated an unrelated ailment.

Juliane Tran, M.D., evaluated Plaintiff as an agency consultant on January 28, 2006. She reported that following rotator cuff surgery, Plaintiff experienced less subluxation of his left shoulder than previously. Plaintiff experienced burning neck pain which radiated to the occipital region with movement. Movement similarly aggravated Plaintiff's back pain.

Tran described Plaintiff as fairly muscular and able to walk into the examination room without assistance or difficulty. He neither used nor needed an assistive device. He slouched toward his right side when sitting. He displayed fair mobility without painful behavior. His motor strength and grip strength were consistently 5/5.

Tran reported her impression:

1. Status post left shoulder rotator cuff surgery. The claimant has full range of motion in the left shoulder, although some mild tenderness to palpation over the shoulder joint.

2. Right left [*sic*] clavicular fracture. The claimant has evidence of right mid clavicular fracture but range of motion of the right shoulder is normal.

3. Possible bilateral cubital tunnel syndrome. The claimant has positive Tinel's test in both elbows and sensory exam noting for abnormal sense in the left ulnar nerve distribution up to the left elbow, although in the right upper extremity it is difficult to see a specific nerve pattern.

4. Back pain possible chronic lumbar radiculopathy. The claimant has decreased left patella reflex, however, with a negative straight leg raising test. He may possibly have chronic lumbar radiculopathy, although straight leg raising test was negative. This is indicative of not having an acute radiculopathy. He has decreased lumbar range of motion.

5. Neck pain. Probably cervical sprain/strain and the claimant has some decrease in cervical range of motion without tenderness to palpation. He has good strength and symmetrical reflexes in the upper extremities. He gives good effort.

Based on this examination, he will be restricted with activities involving lifting more than 25 pounds occasionally and more than ten pounds frequently or activities involving frequent overhead reaching or activities involving frequent movement and twisting of the left and right elbows.

He would be restricted to activities that involve frequent fingering but not occasional fingering.

There are no restrictions with grasping.

He may be restricted to activities that involve sitting more than six hours a day or standing more than six hours a day.

There are no visual restrictions.

There is no climbing, balancing or working with height restrictions.

He may be restricted with activities that involve frequent bending, stooping, kneeling or crouching.

He does not need an assistive device to ambulate.

AR 1234-35.[1]

On February 28, 2006, Durell Sharbaugh, M.D., completed the agency's residual functional capacity assessment. Sharbaugh opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; could sit, stand, and walk for six hours in an eight-hour workday; had unlimited push and pull, with occasional push and pull on the right; and had limited ability to reach (no above shoulder reaching), but had no other limitations.

A case analysis, countersigned by James V. Glaser, M.D., on January 19, 2007, recommended adoption of the ALJ's February 28, 2006 determination of Plaintiff's residual functional capacity.

## II.     Discussion

### A.     Legal Standards

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering age, education, and work experience, engage in any other substantial gainful work existing in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20

---

[1] Cubital tunnel syndrome is numbness, tingling, or pain in the hand or forearm, most commonly the ring and little finger, as a result of increased pressure on the ulnar nerve on the inner portion of the elbow. (The ulnar nerve is the nerve commonly referred to as the "funny bone.") www.assh.org/Public/HandConditions/Pages/CubitalTunnelSyndrome.aspx (July 14, 2011).

4

C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f).  The process requires consideration of the following questions:

| | | |
|---|---|---|
| Step one: | Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two. |
| Step two: | Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate. |
| Step three: | Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled. If not, proceed to step four. |
| Step four: | Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five. |
| Step five: | Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled. |

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

ALJ Havens found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 28, 2005.  His severe impairments included history of left shoulder rotator cuff surgery, history of right clavicle fracture, possible bilateral cubital tunnel syndrome, possible cervical sprain/strain, and minimal hypertrophic lumbar spine spurring at L3-4 and L4-5 levels.   The ALJ concluded that none of Plaintiff's impairments met or equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Plaintiff was unable to perform his past work as a glazier and concrete and stone finisher.  He had the residual functional capacity to perform a range of light work, including lifting and carrying twenty pounds occasionally and ten pounds frequently; standing, walking, or sitting for six hours in an eight-hour workday; and occasional use of his non-dominant right upper extremity for pushing or pulling.  Plaintiff could not use either upper extremity for any forceful pushing, pulling, or working at shoulder level and must avoid concentrated exposure to vibration.  Significant numbers of jobs that Plaintiff could perform are available in the national economy.

**B.     Scope of Review**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

5

a court must determine whether substantial evidence supports the Commissioner's decision. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards, and if the ALJ's findings are supported by substantial evidence. *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987).

### C. Res Judicata and Dr. Tran's Credibility

> The principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings. *See Lyle v. Secretary of Health and Human Servs.*, 700 F.2d 566, 568 n. 2 (9th Cir. 1983). The claimant, in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, must prove "changed circumstances" indicating greater disability. *Taylor [v. Heckler],* 765 F.2d [872,] 875 [9th Cir. 1985].

*Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).

Plaintiff, having previously been found not to be disabled, seeks to overcome the presumption of nondisability through changed circumstances. Apparently, the sole change in this application is Tran's statement that Plaintiff could perform jobs requiring occasional fingering but not frequent fingering. Thus, Plaintiff's only basis for overcoming the *Chavez* presumption in this appeal is to establish that the ALJ erred in rejecting Tran's assessment of his ability to "finger."

Plaintiff's real problem is his failure to provide substantial evidence that his condition has changed since ALJ Flierl denied his most recent prior disability claim. ALJ Flierl found Plaintiff capable of performing light work with manipulative limitations. The record in the instant appeal simply fails to articulate, in any way, how Plaintiff's impairments have changed.

6

Nonetheless, let us first assume that if the ALJ had fully credited Tran's consultative report, Plaintiff could have proved a change of condition. Three types of physicians may offer opinions in social security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (nonexamining physicians)." *Lester*, 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight that the opinion of a doctor who examined but did not treat the claimant, and an examining physician's opinion is generally entitled to more weight than that of a non-examining physician. *Id.* The Social Security Administration favors the opinion of a treating physician over that of nontreating physicians. 20 C.F.R. § 404.1527; *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician is employed to cure and has a greater opportunity to know and observe the patient. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).

Nonetheless, an ALJ may disregard the opinion of a treating physician even if it is uncontradicted. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). But if he or she chooses to do so, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31. An ALJ can meet this requirement by setting forth a detailed and thorough factual summary, including all conflicting testimony; then articulating his or her interpretation of this evidence; and finally, setting forth his or her findings. *Magallanes*, 881 F.2d at 751.

Interestingly, Plaintiff produced little evidence from his current treating physicians other than approximately fifteen pages of doctors' notes from appointments at which his treating physicians renewed his pain medications and addressed unrelated ailments. No treating physician provided an opinion that Plaintiff's ability to use his hands had changed since the denial of his earlier claim, nor is any deterioration of his condition apparent from the treatment notes.

Physicians render two types of opinions in disability cases: (1) medical, clinical opinions regarding the nature of the claimant's impairments and (2) opinions on the claimant's ability to perform work. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). Tran's opinion that

Plaintiff may only occasionally finger is, of course, an opinion on his ability to perform work. Although an ALJ is not bound by opinions rendered by Plaintiff's physicians regarding the ultimate issue of disability, he or she cannot reject them out of hand, but must set forth clear and convincing reasons for rejecting them. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). A general statement that objective factors or the record as a whole are insufficient: the ALJ must tie the objective factors or the record as a whole to the opinions and findings that he or she rejects. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Since Tran's opinion was contradicted, the ALJ was required to provide no more than specific and legitimate reasons for rejecting her opinion. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996)..

The ALJ followed these standards, rejecting Tran's opinion on manipulative limitations as inconsistent with her objective findings:

> The orthopedic consultant examiner determined the claimant was limited to a range of light work activity with additional manipulative limitations related to the diagnosed possible cubital tunnel syndrome. However, I note that this same consultative examiner also recorded a normal grip strength and normal muscle motor strength at 5/5 in both of claimant's upper extremities (Exhibit C3F, pp.3-5).

AR 18.[2]

This Court agrees with the ALJ's assessment of Tran's report, which is inconsistent and equivocal. The history of Plaintiff's present illness (AR 131) includes no reference to his hands or fingers. Phalen's test, which indicates hand numbness attributable to carpal tunnel syndrome, was negative in both of Plaintiff's hands (AR 133). Tinel's test, which assesses compression of the medial nerve affected by cubital tunnel syndrome, was positive in both elbows, but negative at Plaintiff's wrists (AR 133). Plaintiff's motor strength was 5/5, and his grip strength was 5/5 (AR 133). Tran noted decreased sensation to pinpricks at the left ulnar nerve distribution at the elbow and in the right forearm and 1, 3, 4, and 5th fingers (AR 133-134). Tran did not diagnose bilateral cubital tunnel syndrome, but only thought it possible, noting difficulty in seeing a specific nerve pattern in the right upper extremity (AR 134). Finally, Tran restricted the

---

[2] Plaintiff contends that the ALJ failed to address Tran's report, but he is mistaken.

frequency of Plaintiff's fingering to occasional, but did not restrict his grasping (AR 134). Accordingly, the ALJ's determination to give little weight to Tran's opinion is supported by substantial evidence in the record.  Because Tran's opinion lacked credibility, Plaintiff failed to overcome the presumption of continuing disability.

### D.     **Plaintiff's Credibility**

Plaintiff contends that the ALJ erred in finding him not to be credible, arguing that his longitudinal history of pain somehow enhances his credibility.  The Plaintiff does not explain this reasoning.

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional requirement.  *Orn*, 495 F.3d at 635, *quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  But if he or she decides to reject a claimant's testimony after a medical impairment has been established, the ALJ must make specific findings assessing the credibility of the claimant's subjective complaints.  *Ceguerra v. Secretary of Health and Human Services*, 933 F.2d 735, 738 (9th Cir. 1991).  "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834, *quoting Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir. 1988).  He or she must set forth specific reasons for rejecting the claim, explaining why the testimony is unpersuasive.  *Orn*, 495 F.3d at 635.  *See also Robbins v. Social Security Administration*, 466 F.3d 880, 885 (9th Cir. 2006).  The credibility findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

When weighing a claimant's credibility, the ALJ may consider the claimant's reputation for truthfulness, inconsistencies in claimant's testimony or between her testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties about the nature, severity and effect of claimant's claimed symptoms.  *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ may consider "(1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than

9

candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008), *quoting Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996). If the ALJ's finding is supported by substantial evidence, the Court may not second-guess his or her decision. *Thomas*, 278 F.3d at 959.

The Ninth Circuit has summarized the applicable standard:

> [T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific cogent reasons for the disbelief.'" *Morgan*, 169 F.3d [595,] 599 [9th Cir. 1999] (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.* Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony . . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, . . . and are to be relied upon as precedent in adjudicating cases."); *see Daniels v. Apfel*, 154 F.3d 1129, 1131 (10th Cir. 1998) (concluding the ALJ's decision at step three of the disability determination was contrary to agency rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

*Orn*, 495 F.3d at 635.

The ALJ found:

> In his testimony at the hearing, the claimant was pleasant and generally responsive. However, I note that he seemed to exaggerate his limitations somewhat. Initially, the claimant alleged he could sit no more than 15 minutes. However, I observed the claimant sit for 25 minutes before he stood. The claimant alleged he could maintain his concentration for no more than about 15 minutes and that this must be followed by a mental resting period of about 20 minutes. However, I observed the claimant maintain his attention and respond appropriately to questions throughout the entire hearing, which lasted about 35 minutes.
>
> Further diminishing claimant's credibility, I note he has a dismal work history. He has engaged in work activity at the substantial gainful activity [level] for only one full year during the past relevant 15 years.

AR 17.

///

The ALJ's discussion of the apparent inconsistencies of Plaintiff's testimony satisfies the legal requirements. In addition, because the issue here was whether a material change existed in Plaintiff's impairments since the denial of his previous claim, Plaintiff's longitudinal pain was irrelevant to his credibility.

Since the critical question in this appeal is whether Plaintiff's impairments have worsened, particularly with regard to his ability to finger more than occasionally, the Court further notes the inconsistency between the submitted medical records, including Tran's report, and Plaintiff's claim that his left arm and hand and his right hand, arm, and shoulder were completely numb and tingly. The Court will not second-guess the ALJ's assessment of Plaintiff's credibility.

### III.  Conclusion and Order

The Court finds that the ALJ applied appropriate legal standards and that substantial credible evidence supported the ALJ's determination that Plaintiff was not disabled. Accordingly, the Court hereby DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff.

IT IS SO ORDERED.

**Dated:   July 26, 2011**                    /s/ Sandra M. Snyder
                                                                  UNITED STATES MAGISTRATE JUDGE